# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| HAROLD D. SHARP, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-09-149-W |
| | ) | |
| GEO GROUP, EROLL HANCOCK, and | ) | |
| DAVID MILLER, Warden, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Harold D. Sharp, a state prisoner appearing *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his federal constitutional rights. The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C).

Currently pending before the Court is Defendants' Motion to Dismiss/Motion for Summary Judgment [Doc. #25] to which Plaintiff has responded. *See* Motion to Answer Defendants Motion to Dismiss [Doc. #29] (Response). Officials at the Lawton Correctional Facility have filed a Special Report [Doc. #24]. It is recommended that this action be dismissed without prejudice on the basis that Plaintiff has failed to exhaust his administrative remedies.

## I.    Background

Plaintiff is incarcerated in the Lawton Correctional Facility (LCF). In his Complaint, Plaintiff has named as defendants G.E.O. Group, the private company which operates LCF, David Miller, the Warden of LCF, and Eroll Hancock, identified as the food service

supervisor of LCF. Plaintiff claims that between June and August of 2008, while LCF was

"conducting a mandatory lockdown," inmates were served sack lunches for all three meals.

Plaintiff alleges that the methods of preparing and delivering the meals violated both state

and federal health codes in that the sack lunches, after having been "handled numerous

times" by prison officials, were placed in trash bags while the trash bags were on a floor.

According to Plaintiff, the floor was "contaminated with dirt and germs and/or bacteria

which if introduced into the body of an individual could lead to serious health problems."

Plaintiff contends that when the sack lunches were distributed, staff members dragged the

trash bags across the floor from cell to cell. Plaintiff states that the food within the sacks was

not stored in sealed wrappers and that the sacks were often torn, as were the trash bags in

which the individual sack lunches were stored and delivered. According to Plaintiff, the sack

lunches were, therefore, "gathering or accumulating dirt from the floor." Complaint at 8.

Additionally, Plaintiff states, the staff members who distributed the sack lunches did not wear

gloves, a situation which could have led to the "exchange of bodily fluids from person to

person." According to Plaintiff, passing out sack lunches without gloves is a direct violation

of institutional policy and state and federal health code laws. Complaint at 9.

Plaintiff states that Defendant Miller refused to answer any of Plaintiff's complaints

and that, therefore, this situation could not be corrected. Plaintiff further states that

Defendant Hancock was also informed of the situation but refused to act. Complaint at 9.

Plaintiff states that he, himself, is ill and that "exposure to cross contaminates could

lead to long term health threats." Plaintiff further states that he "complained to the medical

staff about [abdominal] pains and nausea possibly due to stress," but that "the medical staff did not make any effort to tend to the Plaintiff due to the understaffed situation they faced." Complaint at 9.[1]

Further, Plaintiff states that the institution was later placed on a "phase program," and that during phases 3-6, "the inmates were made to remain outside of their cells while they went to eat[] and have recreation." During such times, Plaintiff alleges, the inmates were denied access to toilets for two hours or more at a time, and therefore, were forced to "[defecate] and/or relieve themselves in the trash cans and/or showers." He states that he, himself, was forced to "shower in the same location that the [defecation] took place." He states that he was "exposed to bodily fluids which could have led to health problems," and that "long or short term effects are unknown at this time." Complaint at 9.

## II.   Plaintiff's Claims

In Count I, Plaintiff alleges that the Defendants were negligent in not answering complaints and allowing the employees to violate "state and federal health code policies." Plaintiff contends that this negligence "could have led to serious health implications."

In Count II, Plaintiff states that because he is ill, being "forced to eat food he thought could [have led] to serious health implications" caused him to suffer "night sweats, nausea, stomach cramps, loss of appetite and anxiety."

---

[1]Plaintiff does not name any member of the medical staff as a defendant in this action, nor does he assert a claim based on lack of medical care in any of the four counts.

In Count III, Plaintiff states that "exposure to contaminates and bodily fluids is a violation of health code policies" which could have led "to serious health implications and/or death as the Plaintiff is ill."

In Count IV, Plaintiff alleges that "[s]uch treatment is cruel and unusual for any institution to subject anyone to regardless if they are inmates or not." Complaint at 10.

Plaintiff seeks monetary damages for "passive negligence," for "negligence per se" based on alleged "health code violations," for "exposure to conditions unsanitary and unhealthy" and for "cruel and unusual punishment." Attachment to Complaint [Document 1-4] at 6.

III.    **Analysis**

Defendants have raised the affirmative defense that Plaintiff has failed to exhaust administrative remedies as required by the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (failure to exhaust administrative remedies is an affirmative defense under the PLRA). The court-ordered Special Report includes materials outside the pleadings. This Court has considered these materials in determining whether Plaintiff exhausted his administrative remedies before filing this action. Therefore, Defendants' alternative Motion to Dismiss/Motion for Summary Judgment is treated as a motion for summary judgment on the issue of exhaustion. *See* Fed. R. Civ. P. 12(d); 56.

## A.    Standard of Review

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 ( 1986). To defeat a motion for summary judgment, evidence must be based on more than mere speculation, conjecture or surmise. *Rice v. United States*, 166 F.3d 1088, 1091-1092 (10th Cir. 1999). Moreover, the existence of a factual issue does not preclude entry of summary judgment where there is no evidence to support a dispute on that issue or the evidence is so one-sided that no reasonable juror could find for the other side. *True v. United States*, 190 F.3d 1165, 1177 (10th Cir. 1999).

## B.    Failure to Exhaust Administrative Remedies

The grievance procedure formulated by the DOC governs Plaintiff's exhaustion of administrative remedies. *See* Special Report, Exhibit 14, Inmate/Offender Grievance Process (Grievance Process). The Grievance Process requires inmates to seek informal resolution of a complaint by talking with the appropriate official within three days of the incident. *See* Grievance Process, ¶ IV(A). If the inmate does not receive the requested relief, he must then submit a Request to Staff within seven days of the incident. *Id.* ¶ IV(B). If the inmate does not receive a response to his Request to Staff within 30 days, he may file a grievance to the reviewing authority, in this case Defendant Miller, with evidence of having previously submitted a Request to Staff to the proper staff member. When the inmate's complaint is that

a staff member has not responded to a Request to Staff, the inmate may submit a grievance to the reviewing authority, but the grievance must be limited to the issue of the staff member's failure to respond to the Request to Staff. *Id.* ¶ IV(B)(7). If a staff member does respond to a Request to Staff but fails to resolve the issue, the inmate may then submit a formal grievance. The inmate must submit the grievance within fifteen calendar days of the incident or the date of the response to the Request to Staff, whichever is later. *Id.* ¶ V(A)(1). If the grievance is not answered within thirty calendar days of submission, the inmate may send a grievance to the administrative review authority with evidence of having previously submitted the grievance to the proper authority. Such a grievance may assert only that the inmate's grievance was not answered. *Id.* ¶ V(C)(4). If the reviewing authority does answer the grievance but fails to resolve the issue, the inmate may then appeal the unfavorable response to the administrative review authority. *Id.* ¶ VII. The disposition of this appeal by the administrative review authority concludes the administrative process. *Id.* ¶ VII(D)(1).

The record before the Court demonstrates that Plaintiff did not properly follow the steps outlined in the Grievance Process. Plaintiff submitted an Inmate/Offender Grievance Report Form to Defendant Miller on July 15, 2008, without any indication that he had first attempted informal resolution of his complaint by filing a Request to Staff. Plaintiff stated in the grievance that "[r]equests were made during June and July but the giant lack of communication hinders our progress in resolving this issue." Special Report, Exhibit 3. Plaintiff stopped short of stating that he had actually submitted requests to staff which had not been answered. Moreover, the July 15, 2008 grievance submitted to Defendant Miller

6

cannot be construed as a grievance based on lack of response to a Request to Staff because the grievance does not comply with the requirement in ¶ IV(B)(7) that the grievance be limited to the issue of unanswered requests to staff. On July 23, 2008, Defendant Miller returned the grievance form to Plaintiff unanswered. The accompanying memorandum informed Plaintiff that his grievance was not being answered because he had not previously submitted a Request to Staff. Special Report, Exhibit 4.

On July 17, 2008, two days after he submitted the first grievance to Defendant Miller, Plaintiff submitted a Request to Staff addressed to the "Kitchen Manager" complaining that "Guards are not using gloves to pass out our food, and they are storing and dragging our food on the ground." Special Report, Exhibit 2. A staff member responded to the Request to Staff on July 23, 2008, stating that Plaintiff's issue would "be addressed." *Id.* But according to Plaintiff, the food service practices were not changed. Nevertheless, Plaintiff did not timely submit a grievance to Defendant Miller.

On August 17, 2008, twenty-five days after Plaintiff received the answer to his Request to Staff, Plaintiff submitted another Inmate/Offender Grievance Report Form to Defendant Miller in which Plaintiff again complained about the manner in which food was being distributed. In describing his attempts to informally resolve the complaint, Plaintiff wrote that he had submitted three requests to staff to Mrs. Cation Major, identified as "food kitchen manager," but that she had not replied. As to the "action you [Plaintiff] believe the reviewing authority may lawfully take," Plaintiff again complained that the "handling of our

7

food is unlawful and promotes health risks" and asked that "appropriate measures be taken to satisfy this grievance please." Special Report, Exhibit 5.[2] On September 3, 2008, this Inmate/Offender Grievance Report Form was returned to Plaintiff unanswered. The memorandum accompanying the unanswered grievance again indicated that Plaintiff had failed to show that he had pursued informal resolution to his complaint by filing a Request to Staff. Special Report, Exhibit 6.

On September 12, 2008, Plaintiff submitted a grievance appeal to Justin Jones, Director of DOC. In addition to asserting that he had submitted two requests to staff that were not answered and two grievances that "were not properly processed," Plaintiff also complained about the manner in which food had been served and requested relief in the form of having the Health Department "institute and oversee the emergency food handling process." Special Report, Exhibit 7. The Administrative Review Authority returned the grievance appeal unanswered. The accompanying memorandum informed Plaintiff that his grievance appeal would not be answered because he had not submitted a response from the "facility head." Special Report, Exhibit 8.

In his Response to the dispositive motion submitted by Defendants, Plaintiff states that this case "is suitable for decision w/out Adm. Remedy Because Plaintiff acted in good faith."

_____

[2]This grievance was not limited to the lack of response to the requests to staff that Plaintiff had allegedly submitted. In fact, the only action Plaintiff requested was that the food be properly handled. It is apparent that the reason for submitting the grievance was to compel the kitchen manager to change the food handling practices. Therefore, this grievance did not comply with the portion of the Grievance Process which allows a grievance to be submitted when a staff member fails to respond to a Request to Staff within 30 days of submission. *See* Special Report, Exhibit 14 ¶ IV(B)(7).

Response at 3.[3] In addition to copies of the Request to Staff form and the Inmate/Offender

Grievance Report Form included in the Special Report, Plaintiff has attached a letter he wrote

to the Oklahoma Corporation Commission which was answered by Renee Watkins,

administrator of the Oklahoma Department of Corrections Private Prison and Jail

Administration. Response, Exhibits 10-11. Contacting the Private Prison and Jail

Administration is not required to exhaust administrative remedies and cannot be substituted

for the steps required by the Grievance Process. Moreover, there is no "good faith"

exception to the required exhaustion of administrative remedies. The Supreme Court has

stressed that it "will not read futility *or other exceptions* into statutory exhaustion

requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741

n. 6 (2001) (emphasis added). "To exhaust administrative remedies an inmate must properly

comply with grievance procedures; substantial compliance is insufficient." *Fields v.

Oklahoma State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007) (*citing Jernigan v.

Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)).

The undisputed evidence in the record before the Court demonstrates that Plaintiff did

not follow the steps outlined in the Grievance Process. "'An inmate who begins the

grievance process but does not complete it is barred from pursuing a [federal] claim under

the PLRA for failure to exhaust his administrative remedies.'" *Fields*, 511 F.3d at 1112

(*quoting Jernigan*, 304 F.3d at 1032 (alteration in original)). It is therefore recommended

---

[3]The remainder of Plaintiff's Response addresses the merits of his claims. Plaintiff has
attached numerous documents that appear to be questionnaires answered by other inmates.

that the Defendants' Motion be granted on the basis that Plaintiff has failed to exhaust his administrative remedies. It is further recommended that this case be dismissed without prejudice. *See Gallagher v. Shelton*, ___ F.3d ___, 2009 WL 4047952 at *3 (10th Cir. Nov. 24, 2009) ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be without prejudice.") (to be published).

## RECOMMENDATION

It is recommended that Defendants' Motion [Doc. #25] be granted based on Plaintiff's failure to exhaust his administrative remedies and that this case be dismissed without prejudice.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections, and a party may respond to another party's objections within 14 days after being served with a copy of the objections. Fed. R. Civ. P. 72(b)(2). Any objections and responses must be filed with the Clerk of the District Court. Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __18th__ day of December, 2009.



_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE